# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EYESMATCH LTD. and MEMOMI LABS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., INSTAGRAM, LLC, and WHATSAPP LLC, <br><br> Defendants. | C.A. No. 21-111-RGA-JLH |

## REPORT AND RECOMMENDATION

Presently pending before the Court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 7.) As announced at the hearing on September 21, 2021,[1] I recommend that the motion be GRANTED-IN-PART and DENIED-IN-PART. My Report and Recommendation was announced from the bench at the conclusion of the hearing as follows:

> This is my report and recommendation on the pending motion to dismiss for failure to state a claim in *Eyesmatch v. Facebook*, C.A. No. 21-111-RGA-JLH. (D.I. 7.) I have reviewed the Complaint and attached exhibits (D.I. 1), the parties' briefs and exhibits (D.I. 8, 9, 13, 15), and the supplemental authority submitted by the parties (D.I. 38, 40, 45). I have also carefully considered the arguments made at today's hearing.
>
> I will summarize the reasons for my recommendation in a moment. But before I do, I want to be clear that my failure to address a particular argument or cited case does not mean that I did not consider it. I also note that while we will not be issuing a separate written recommendation, we will issue a document incorporating the recommendation that I'm about to make.

---

[1] Citations to the transcript of that hearing are indicated as (Tr. __).

For the following reasons, I recommend that the motion to dismiss be GRANTED-IN-PART and DENIED-IN-PART.

Plaintiffs EyesMatch Ltd. and Memomi Labs, Inc. filed their Complaint on January 28, 2021.  (D.I. 1.)  The Complaint alleges that Defendants Facebook, Inc., Instagram, LLC, and WhatsApp [LLC] directly and indirectly infringe the claims of four patents.[2] The '883 and '481 patents have similar written descriptions and are directed to systems and methods for enabling appearance comparisons with an interactive display station that is capable of operating in both a mirror mode and a display mode.[3]  (D.I. 1 ¶¶ 42, 52.)  The '109 Patent is directed to methods of modifying a stream of images of a user captured by a camera such that the images appear to be the reflection of a mirror.[4]  (*Id.* ¶ 61.)  The '110 Patent is

---

[2] U.S. Patent Nos. 8,624,883 (the "'883 Patent") (D.I. 1, Ex. A); 7,948,481 (the "'481 Patent") (*id.*, Ex. B); 8,982,109 (the "'109 Patent") (*id.*, Ex. C); and 8,982,110 (the "'110 Patent") (*id.*, Ex. D) (collectively the "Asserted Patents" or the "Patents-in-Suit").

[3] Claim 1 of the '883 Patent reads:
    1.  A system to enable appearance comparison, the system comprising:
        at least one interactive imaging and display station connected to a network, the station comprising:
            a mirror-display device capable of selectably operating in mirror mode, a display mode, or both a mirror and a display mode;
            an imaging device to capture video of one or more appearances from a field-of-view in front of said mirror-display device;
            a storage device to store the video; and
            an image control unit to select the mode of operation of said mirror-display device according to a user command, and to display a mirrored image of the video retrieved from the storage device.

[4] Claim 1 of the '109 Patent reads:
    1.  A method for operating a system having a monitor, a camera, and a processor, so as to display a mirror-mimicking image on the monitor, by performing non-ordered steps comprising: obtaining a digital image from a camera; flipping the image about a vertical axis so as to reverse right and left sides of the image; applying a transformation mapping to the image to modify the image such that it appears to mimic a reflection of a mirror; resizing the image to reduce variations caused by changes in object's distance to the camera; displaying the image on the monitor after performing the flipping, transformation

directed to methods of modifying a stream of images of a user so that the images appear to be captured by a different point of view than of the camera's actual point of view. (*Id.* ¶ 71.)

The Complaint alleges that "Defendants' photo and video capturing and sharing products and applications—including at least Facebook Portal devices, and the Facebook App, the Facebook Messenger App, the WhatsApp App, and the Instagram App (collectively, the 'Accused Products')—practice claimed inventions of the Patents-in-Suit." (*Id.* ¶ 80.)

The Complaint also incorporates by reference 33 claim charts which set forth Plaintiffs' theories about how each Accused Product is alleged to meet the elements of exemplary claims of the Asserted Patents. (*Id.*, Exs. E-KK.) The Complaint alleges that Facebook is a direct infringer (under 35 U.S.C. § 271(a)) and an indirect infringer (under § 271(b) and (c)) of all four Asserted Patents; that Instagram is a direct and indirect infringer of the '833, '481, and '109 Patents; and that WhatsApp is a direct and indirect infringer of the '833 and '481 Patents. (*Id.* ¶¶ 80-170.) As to indirect infringement, the Complaint alleges that customers directly infringe when they use the Facebook Portal devices and when customers use Defendants' apps installed on their mobile devices. (*See, e.g.*, *id.* ¶¶ 91, 93, 94.)

Defendants filed the pending Motion to Dismiss on March 22, 2021. (D.I. 7.) Defendants challenge only Plaintiffs' indirect infringement claims.

I am not going to read into the record the law that applies to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). I previously set forth the applicable legal standard in another report and recommendation, *CoolTVNetwork.com v. Facebook*.[5] I incorporate that legal standard by reference.

---

mapping, and resizing; wherein the non-ordered steps are performed on a series of images of a live video feed from the camera; determining distance to a user appearing in the live video feed; and, varying rate at which the non-ordered steps are performed on the series of images according to the distance.

[5] *CoolTVNetwork.com v. Facebook, Inc.*, No. 19-292, 2019 WL 4415283 (D. Del. Sept. 16, 2019), *report and recommendation adopted,* 2020 WL 8079820 (D. Del. June 12, 2020).
A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To

Section 271(b) of Title 35 provides a cause of action for induced infringement. It provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To state a claim of induced infringement that can survive a motion to dismiss, the complaint must plead (1) an underlying act of direct infringement, (2) facts plausibly supporting an inference

---

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not. *Id*. at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

. . . [A] complaint sufficiently pleads direct patent infringement when it puts the defendant "on notice of what activity . . . is being accused of infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)); *see also BioMérieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS, 2018 WL 4603267, at *3 (D. Del. Sept. 25, 2018). There is no requirement that the plaintiff "plead facts establishing that each element of an asserted claim is met." *Nalco*, 883 F.3d at 1350 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012)).

The Federal Circuit has further directed that, at this stage of the litigation, the plaintiff is "entitled to all inferences in its favor on its theory [of infringement]." *Id.* at 1349. And district courts have been cautioned against resolving claim construction disputes at this stage. *Id.* (reversing the district court's dismissal because "Defendants' arguments boil down to objections to [Plaintiff's] proposed claim construction . . . a dispute not suitable for resolution on a motion to dismiss").

*Id.* at *3-4.

4

that the defendant intended another to take the acts that are alleged to constitute infringement, and (3) facts plausibly supporting an inference that the defendant knew that the induced acts constituted infringement.[6]

Section 271(c) provides a cause of action for contributory infringement. It provides that "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c). "A plaintiff sufficiently pleads contributory infringement when it asserts that a defendant: '(1) had knowledge of the patent; (2) sold products especially made for infringing use; (3) had knowledge of the infringing use; (4) sold products with no substantial non-infringing use; and (5) [others] directly infringed.'"[7]

Defendants first argue that the Court should dismiss all of the induced and contributory infringement claims because the Complaint does not allege that Defendants had knowledge of the Asserted Patents or knowledge of infringement prior to the filing of the Complaint. Notwithstanding the Complaint's assertion that each Defendant "has induced and continues to induce infringement" and "has contributed and continues to contribute to infringement" (D.I. 1 ¶¶ 91-93), Plaintiffs' Answering Brief says that they are not pressing any pre-suit indirect infringement claims.[8] Accordingly, I recommend that the Court dismiss the pre-suit indirect infringement claims.

Defendants argue that Plaintiffs cannot state a claim for post-suit indirect infringement. For that proposition they rely in large part on Judge Connolly's recent decision in *Zapfraud*, in which Judge Connolly, "in the absence of binding authority to the contrary

---

[6] *Nalco*, 883 F.3d at 1355-56; *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. 18-98, 2019 WL 3069773, at *2 (D. Del. July 12, 2019).

[7] *Groove Digital, Inc. v. Jam City, Inc.*, No. 18-1331, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019) (quoting *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d at 559, 567 (D. Del. 2012)).

[8] (D.I. 13 at 1; Tr. 31:8-18.)

from the Federal Circuit and Supreme Court, [adopted] the rule that the operative complaint in a lawsuit fails to state a claim for indirect patent infringement where the defendant's alleged knowledge of the Asserted Patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit."[9] As many have acknowledged, courts—including courts within this district—disagree as to whether a pleading alleging post-suit inducement must allege that the defendant had the requisite knowledge prior to the filing of that particular pleading (or the lawsuit itself).[10] I am also aware that there are courts—including in this district—that appear to hold that in the absence of pre-suit knowledge, a post-suit indirect infringement claim can only go forward where the plaintiff amends its complaint to allege that defendant had knowledge based on the filing of the original complaint.

The parties in this case agree that there is currently no binding authority from the Federal Circuit or the Supreme Court on this point.[11] I have read and considered the lines of cases, and I don't have anything to add to the discourse that has not already been said. Ultimately, I am persuaded by the reasoning of Judge Bryson, sitting by designation in this district, in *IOENGINE*.[12] In that case, Judge Bryson concluded that there is no requirement that a plaintiff plead pre-suit knowledge for claims of post-suit indirect infringement to survive a motion to dismiss.

Here, the Complaint puts Defendants on notice of the patents and, as I will explain in more detail in a minute, the allegations in the Complaint adequately put Defendants on notice of the conduct alleged to infringe. (D.I. 1 ¶¶ 91-94, 99-103, 108-112, 117-121, 126-130, 135-139, 144-149, 154-158, 163-167.) The Complaint further alleges that Defendants have continued to induce infringement and contributorily infringe since the Complaint was

---

[9] *Zapfraud, Inc. v. Barracuda Networks, Inc.*, No. 19-1687, 2021 WL 1134687, at *4 (D. Del. Mar. 24, 2021).

[10] *Id*. at *2-3 n.1 & 2 (collecting cases and discussing the disagreements between district courts across the country and between "current and recent judges of this District").

[11] (Tr. 6:11-15, 26:24-27:3.)

[12] *IOENGINE, LLC v. PayPal Holdings, Inc*., No. 18-452, 2019 WL 330515, at *3-4 (D. Del. Jan. 25, 2019).

filed.[13] (*Id*.)  In my view, the allegations are enough to plausibly show the knowledge required to state a claim of post-suit indirect infringement.[14]

Defendants nevertheless point to two recent cases from Judge Andrews—*B#*[15] and *Express Mobile*[16]—that Defendants contend suggest that he now intends to adopt Judge Connolly's rule in *Zapfraud*.  I have two responses to that argument.

First, I looked at those cases carefully.  It is true that, in both cases, the Court entirely dismissed claims of indirect infringement of some patents based on defendants' arguments that the operative complaints failed to adequately allege pre-suit knowledge.  But it does not appear that the plaintiff in either case distinguished between pre- and post-suit conduct or that [they] argued that the indirect infringement claims should nevertheless be allowed to proceed with respect to post-suit conduct.  In other words, the Court was not asked to decide the question in either case.  Moreover, the Court allowed the plaintiffs in those cases leave to amend, leaving open the possibility that the Court would entertain post-suit indirect infringement claims.

Second, as Plaintiffs pointed out in argument today, this case has been referred to me for my independent recommendation.  My recommendation, based on my own understanding of the law and the arguments presented in this case, is that Plaintiffs' post-suit indirect infringement claims be allowed to proceed.

Defendants next argue that, for three separate reasons, Plaintiffs separately failed to plausibly plead contributory infringement.  First, Defendants argue that the Complaint fails to plead facts sufficient to support an inference that the Accused Products have no substantial non-infringing use.  I disagree.

---

[13] Defendants do not dispute that, since receiving the Complaint, they have continued the actions that allegedly induce or contribute to infringement.  (Tr. 39:11-40:6.)

[14] *See IOENGINE*, 2019 WL 330515, at *3-4 (declining to dismiss post-suit indirect infringement in original complaint where service of that complaint conveyed knowledge of infringement to defendant); *Groove Digital*, 2019 WL 351254, at *4 (same).

[15] *B# on Demand LLC v. Spotify Tech. S.A.*, 484 F. Supp. 3d 188, 206 (D. Del. 2020).

[16] *Express Mobile, Inc. v. Squarespace, Inc.*, No. 20-1163, 2021 WL 3772040, at *3-4 (D. Del. Aug. 25, 2021).

The Complaint identifies four specific apps that can be installed on users' mobile devices and a hardware product with embedded software, each of whose distribution allegedly contributes to infringement by end users. (D.I. 1 ¶¶ 93, 102, 111, 120, 129, 138, 148, 157, 166.) It expressly alleges that each accused product "contains software components that are especially made for or adapted for use to infringe the claims of the [Patents-in-Suit] and are not a staple article of commerce and are not suitable for substantial non-infringing use." (*Id*.) In addition, the Complaint attaches a stack of claim charts that map the elements of the asserted claims to specific features in Defendants' products. That is enough at this stage.

While I recognize that "the burden of proof as to the absence of substantial non-infringing uses" ultimately "falls on the plaintiff," the Complaint does not need to "plead with specificity something that does not exist" in order to state a claim for contributory infringement.[17] Defendants point out that the accused apps and Portal device are capable of doing other things besides performing the claimed methods—for example, taking rear-facing photos, recording voice messages, or controlling music. But, even if true, that would not necessarily defeat the contributory infringement claims. In *Ricoh*, the Federal Circuit held that a Defendant can be liable as a contributory infringer if it sells a product that has a component that has no use other than infringing a patent, even if the product, as a whole, can be used for other things.[18] Here, Plaintiffs allege that certain software components of the accused products are not suitable for a non-infringing use. If true, those facts may support a contributory infringement claim.[19]

---

[17] *IOENGINE*, 2019 WL 330515, at *5 (quoting *Merck, Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, No. 14-874, 2015 WL 4036951, at *7 (D. Del. 2015)).

[18] *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1338 (2008) ("When a manufacturer includes in its product a component that can *only* infringe, the inference that infringement is intended is unavoidable.").

[19] *Compare Ricoh*, 550 F.3d at 1337 ("Quanta should not be permitted to escape liability as a contributory infringer merely by embedding that microcontroller in a larger product with some additional, separable feature before importing and selling it. If we were to hold otherwise, then so long as the resulting product, as a whole, has a substantial non-infringing use based solely on the additional feature, no contributory liability would exist despite the presence of a component that, if sold alone, plainly would incur liability.") *and Groove Digital*, 2019 WL 351254, at *4 (allegations that "[t]he software and instructions are not staple articles of commerce and have no substantial non-infringing uses" and that "they are specifically designed to work with the Accused Products and their only purpose is to operate in a manner that directly infringes the asserted claims

Defendants nevertheless contend that the Complaint is insufficient because it "never specifically identifies the accused components that allegedly contribute to infringement and have no substantial non-infringing uses, as would be required to state a claim for contributory infringement." (D.I. 13 at 5.) But I do not think that Plaintiffs must identify at the pleading stage what specific portions of the source code in the Accused Products are only capable of infringement and what parts are capable of other uses. And the claim charts attached to the Complaint put Defendants on notice of what features in the Accused Products are alleged to meet the elements of the claims. It may be, as Defendants contend, that some of the individual features described in the claim chart have non-infringing uses, but the functional description in Plaintiffs' claim charts is enough for the Court to conclude that it is plausible that there are "components" that only infringe.

In sum, Plaintiffs have adequately pleaded that the Accused Products contain software components that have no substantial non-infringing use. Plaintiffs may ultimately turn out to be wrong, but I cannot make that determination at the pleading stage.

Defendants also contend that the Complaint fails to sufficiently identify the identity of a direct infringer. The Complaint alleges that Defendants contribute to infringement "by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying material components of the claimed system for capturing, comparing, displaying, and/or manipulating images, such as its client software for use with mobile devices, and servers and other network infrastructure equipment that enables customers to engage in capturing, comparing, displaying, and/or manipulating images." (*See, e.g.*, D.I. 1 ¶¶ 93, 102, 111, 120, 129, 138, 148, 157, 166.) The Complaint identifies Defendants' customers—*i.e.*, the end users—as the alleged direct infringers.

Defendants do not contend that the Complaint is required to identify a specific customer, and that is not the law. The allegations

---

of the [asserted patent]" were sufficient to state contributory infringement claim) *with Bill of Lading*, 681 F.3d at 1337-38 (holding that pleading "the process for" using the accused product in an infringing way "has no other substantial non-infringing use" is not the same as pleading the accused product contains a component that can only infringe, and therefore fails to state a claim for contributory infringement).

pass muster if Plaintiffs plead facts sufficient to allow an inference that at least one direct infringer exists, and they have done so here.[20]

Finally, Defendants argue that the Complaint fails to plausibly allege that the accused mobile device applications are "sold" within the meaning of 35 U.S.C. § 271(c). Defendants argue that the Complaint alleges no specific facts supporting the inference that Defendants sell the accused apps to customers within the meaning of § 271(c), and that they are not in fact sold because they can be downloaded for free. Plaintiffs contend that a "sale" does not necessarily require the exchange of money and that whether Defendants' customers provided consideration is a dispute of fact that should not be resolved on a motion to dismiss.[21]

I note, as an initial matter, that even if I agreed with Defendants' argument, it would not resolve the contributory infringement claims against Defendant Facebook, as there is no dispute at this stage that it "sells" the accused Portal hardware devices.[22] With respect to the accused software apps, the Complaint alleges that Defendants contribute to infringement of the Asserted Patents "by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying material components of the claimed system . . . such as its client software for use with mobile devices." (D.I. 1 ¶¶ 93, 102, 111, 120, 129, 138, 148, 157, 166.) The parties do not dispute that there can be no liability under § 271(c) if a product is supplied for free without any consideration in return. But the Complaint's allegation that Defendants sell their apps to end users specifies a specific transaction which plausibly occurs.[23] (D.I. 1 ¶¶ 93, 102, 111, 120, 129, 138, 148, 157, 166.) I

---

[20] *See Bill of Lading*, 681 F.3d at 1336.

[21] The parties in this case have not addressed whether customers' downloading of Defendants' apps could be the predicate for a sale within the meaning of § 271(c), instead restricting their arguments to whether Plaintiffs have adequately pleaded consideration. *See Nuance Commc'ns Inc. v. Tellme Networks Inc.*, 707 F. Supp. 2d 472, 487 (D. Del. 2010); *see also In re Kollar*, 286 F.3d 1326, 1331 n.3 (Fed. Cir. 2002) ("In certain situations, a 'license' in the [sense of a sale of an interest that entitles the purchaser to possession and use] may be tantamount to a sale (*e.g.*, a standard computer software license) . . . because '[t]he product is . . . just as immediately transferred to the 'buyer' as if it were sold.'" (quoting *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1053 (Fed. Cir. 2001)).

[22] (Tr. 21:21-22:3.)

[23] Plaintiffs' allegations include that Defendants are "supplying" material components. Both parties agree that "supplying" alone, without consideration, would be insufficient to meet the

10


do not think the Plaintiffs must allege why that transaction meets the strictures of § 271(c) in their pleading by identifying the precise consideration paid to Defendants. Nor does the Complaint allege that no consideration is received (in which case it would be self-defeating).

Under these circumstances, I conclude that Plaintiffs have adequately pleaded that the Defendants' mobile device applications are "sold." Defendants may ultimately be right that Plaintiffs cannot show a legally sufficient "sale" for some or most of the Accused Products, but the record is insufficient to make that determination at this stage as a matter of law.

For all the reasons I've stated, I recommend that Defendants' Motion to Dismiss (D.I. 7) be GRANTED-IN-PART and DENIED-IN-PART.

To sum up, I recommend that the Court (1) dismiss Plaintiffs' pre-suit indirect infringement claims and (2) deny Defendants' motion in all other respects.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) & (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.

Dated: October 1, 2021

Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE

---

requirements of 35 U.S.C. § 271(c). However, the inclusion of the "supplying" allegation does not make Plaintiffs' other allegation, that Defendants' apps are "sold," implausible.